UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MAHLIK ELLINGTON,

        Petitioner,

  v.                                       Case No. 07-C-136

GREG GRAMS,

        Respondent.

**MEMORANDUM DECISION AND ORDER
DENYING PETITION FOR HABEAS CORPUS**

      A Milwaukee County jury found Petitioner Mahlik Ellington guilty of aggravated battery in the brutal beating of his girlfriend Marilyn B. The judge sentenced him to twelve years in the custody of the Wisconsin Department of Corrections, the first seven to be served in secure confinement, followed by five years on extended supervision. After exhausting his state court remedies, Ellington filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming he is in custody in violation of his constitutional rights. In support of his petition, Ellington makes three claims. First, he claims that the trial court erroneously instructed the jury on the meaning of "great bodily harm" as that phrase is used in the Wisconsin statute under which he was convicted. Ellington next claims that he was denied his constitutional right to confront a hostile witness when a police detective read aloud at trial portions of the victim's medical records and testified that he considered medical records to be reliable. Finally, Ellington claims he received ineffective assistance of trial counsel when his trial attorney failed to object to this testimony relating to the medical records.

For the reasons set forth below, I conclude that the decisions of the Wisconsin courts rejecting Ellington's claims are not based on an unreasonable determination of the facts in light of the evidence presented and are not contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Ellington's petition will be denied.

### I. BACKGROUND

At trial, Ellington did not dispute the State's claim that he had beaten his girlfriend. Instead, his defense was that the injuries she sustained did not constitute "great bodily harm," an essential element of the crime of aggravated battery. The evidence bearing on that issue consisted of the testimony of Marilyn B., the records of the hospital in which she was treated, the testimony of the police detective who investigated the crime, and photographs of Marilyn B.'s injuries taken at the hospital.

Marilyn B. testified that after dating Ellington for one month, she told him that she wanted to end their relationship. He responded by choking, hitting, and kicking her. *State v. Ellington*, 2005 WI App 243, ¶ 3, 288 Wis. 2d 264, ¶ 3, 707 N.W.2d 907, ¶ 3. Marilyn B. described the incident by saying, "He grabbed me around the neck and he choked me . . . I flipped over [a] porch, or he pushed me over that porch, or something, and I end [sic] up on the ground, and he started beating me in my face and stomping on my face with his foot and my stomach and back . . . ." *Id.*

Erik Villarreal, the Milwaukee police detective assigned to investigate the crime, testified that he went to the hospital to talk to Marilyn B. and saw that "[H]er eyes were all swollen shut . . . [h]er front lip was splitted [sic] wide open, and there was [sic] distinct tread patterns on her face from footprints . . . [and] visible bleeding from the ear, nose, mouth, eyes." *Id.* at ¶ 4. Villarreal

also read aloud to the jury excerpts from medical records that had already been received into evidence without objection. *Id*. at ¶ 3. These records indicated that Marilyn B. had "a blowout fracture," a "depressed frontal skull fracture," and a "right mandible fracture." *Id*. Villarreal testified that in the past, he had found certified medical records to be reliable. *Id*. at ¶ 5.

Based on the evidence presented, the jury found that Ellington had intentionally caused Marilyn B. great bodily harm and returned a verdict of guilty on the charge of aggravated battery. On direct appeal, the Wisconsin Court of Appeals affirmed Ellington's conviction and an order denying his motion for postconviction relief in a published opinion issued October 25, 2005. *State v. Ellington*, 2005 WI App 243, 288 Wis.2d 264, 707 N.W.2d 907. The Wisconsin Court of Appeals held that (1) the jury instruction in question did not deny Ellington a fair trial, *Id*. at ¶ 6; (2) Ellington's confrontation claim was not properly preserved for state appellate review, *Id*. at ¶ 12; and (3) trial-counsel's performance did not constitute ineffective assistance, because the reading of the excerpts from the admitted records was not prejudicial. *Id*. at ¶ 16. After the Wisconsin Supreme Court denied review and all state court remedies were exhausted, Ellington petitioned this court for a writ of habeas corpus.

## II. ANALYSIS

### A. AEDPA Standard

Habeas relief for those serving sentences imposed by state courts shall not be granted under the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) unless the adjudication of the claim:

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In this case, Ellington contends the Wisconsin Court of Appeal's decision is contrary to, or involved an unreasonable application of, clearly established federal law, and was based, in part, upon an unreasonable determination of the facts. A state court's decision is contrary to Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision may also be contrary to Supreme Court precedent "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Id.* "The text of § 2254(d)(1) . . . suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme Court]" in order to be considered contrary to that precedent. *Id.*

A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "A state-court decision also involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

To prevail under section 2254(d)(2), a petitioner must show a decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner can rebut the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B. Jury Instruction**

Ellington was convicted of aggravated battery under Wis. Stat. § 940.19(5), for inflicting "great bodily harm" on Marilyn B. "Great bodily harm" is defined at Wis. Stat. § 939.22(14) as "bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." The trial court instructed the jury that it could find Ellington guilty of "great bodily harm" if it found that the State had proven beyond a reasonable doubt that Ellington inflicted "serious bodily injury" on Marilyn B. Ellington claims that this jury instruction was erroneous and deprived him of due process. He contends that the phrase "serious bodily injury" should be limited by its context in the statute where it follows descriptions of permanent disfigurement, permanent impairment, and substantial risk of death. Without this context, he claims, the jury was free to find him guilty on the basis of acts that fell below the threshold of "great bodily harm," and upon the jurors' own perceptions of severity, without the remainder of the statute as a guide. (Br. Supp. Pet. 3.)

In rejecting Ellington's challenge to the jury instruction, the Wisconsin Court of Appeals noted that his claim was based on the assumption that § 939.22(14) was to be interpreted according to the doctrine of statutory construction known as *ejusdem generis,* a Latin phrase meaning "of the

5

same class." *Black's Law Dictionary* 535 (7th ed. 1999). The Court of Appeals observed, however, that the Wisconsin Supreme Court had explicitly rejected such an interpretation in *La Barge v. State*, 74 Wis. 2d 327, 333, 246 N.W.2d 794, 797 (1976). In *La Barge*, the Court had concluded from its own review of the legislative history of the statute that "the phrase, 'or other serious bodily injury,' was designed as an intentional broadening of the scope of the statute to include bodily injuries which were serious, although not of the same type or category as those recited in the statute." *Id.*, 74 Wis.2d at 332, 246 N.W.2d at 796 (emphasis added). Thus, the Court of Appeals concluded in Ellington's case that the trial court had properly instructed the jury under Wisconsin law.

To prevail on his petition here, Ellington must show that the decision in *La Barge* is contrary to federal law clearly established by Supreme Court precedent. This he cannot do. "State courts are the ultimate expositors of their own states' laws and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of that state except in extreme circumstances . . . ." *McCloud v. Deppisch*, 409 F.3d 869 (7th Cir. 2005) (citations omitted).[1] Where the Wisconsin Supreme Court and "[t]he Wisconsin Court of Appeals undertook an inquiry into the state legislature's intent," and reached a conclusion, a federal court is "bound by that determination." *Id.* Ellington does not point to any controlling authority from the United States Supreme Court that would suggest the existence of any federal

---

[1] Federal courts have, on rare occasions, re-examined a state court's interpretation of state law when it appears to be an "obvious subterfuge to evade consideration of a federal issue." *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129 (1945); *see Ward v. Love County*, 253 U.S. 17 (1921); *Terre Haute & I.R. Co. v. Indiana ex rel. Ketcham*, 194 U.S. 579 (1904). No such extreme circumstance is present here.

6

constitutional issue with respect to the state court's interpretation of the meaning of "great bodily harm" or the propriety, under Wisconsin law, of the jury instruction given at Ellington's trial. The court knows of no such authority. Therefore, Ellington's claim that the trial court erroneously instructed the jury fails.

**C. Confrontation Clause**

Ellington next claims that he was deprived of his right to confront a hostile witness when Erik Villarreal was permitted to read aloud at trial excerpts from certified medical records that had previously been admitted into evidence pursuant to Wis. Stats. § 908.03(6m) without objection, and testified that he considered medical records reliable. This testimony was permitted over Ellington's trial counsel's objection as to relevancy. (Trial Tr. 77: 13-14.) The Wisconsin Court of Appeals concluded that Ellington's challenge based on the Confrontation Clause was not properly preserved for direct appellate review, because "an objection on relevancy grounds does not preserve a confrontation-based argument." *Ellington*, 707 N.W.2d 907 at ¶ 14. Yet the court briefly addressed the issue in the context of Ellington's ineffective assistance claim, finding that medical records containing patient-victim statements are business records that may be admitted into evidence without violating the Confrontation Clause. *Id*. at ¶ 16.

The Supreme Court has long recognized the right of a person accused of a crime to confront the witnesses against him and to subject such witnesses to cross-examination, "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970). This fundamental right to confrontation is found in the Sixth Amendment, and applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406, (1965). However, the Court has never held that the Confrontation Clause bars the use of all hearsay evidence at a criminal trial.

7

In fact, that approach has been "long rejected as unintended and too extreme." *Ohio v. Roberts*, 448 U.S. 56, 63 (1980) (overruled on other grounds by *Crawford v. Washington*, 541 U.S. 36 (2004)). Thus, the issue courts must determine is which statements can be admitted into evidence without violating the Sixth Amendment.

In *Crawford v. Washington*, the Supreme Court held that statements considered "testimonial" in nature cannot be admitted unless the witness who made them is unavailable and the defendant has had a prior opportunity for cross-examination of that witness. 541 U.S. 36 (2004).[2] Testimonial statements include *ex parte* in-court testimony or its functional equivalent, such as affidavits, custodial interrogations, prior testimony that the defendant was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially. *Id.* at 51. Statements that by their nature are not testimonial, on the other hand, include business records and statements made in the course of a conspiracy. *Id.* at 56. More recently, the Court addressed the issue of when statements made in response to police interrogation are testimonial:

> Without attempting to produce an exhaustive classification of all conceivable statements-or even all conceivable statements in response to police interrogation-as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

---

[2] Although Ellington's trial took place in 2003, prior to the *Crawford* decision, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

8

*Davis v. Washington*, 126 S.Ct. 2266, 2273-74 (2006). In *Davis*, the Court held that a domestic abuse victim's statements during an emergency 911 call in response the operator's questions were not testimonial, and therefore, were not subject to Confrontation Clause.

In light of the foregoing, it is clear that the Wisconsin Court of Appeals' conclusion that admission of Marilyn B.'s medical records did not violate Ellington's rights under the Confrontation Clause is not contrary to, nor does it constitute an unreasonable application of, clearly established federal law. Medical records documenting the victim's hospital treatment here were not " 'made under circumstances which would lead an objective witness reasonably to believe that the[y] would be available for use at a later trial.' " *Crawford*, 541 U.S. at pp. 51-52. Nor do the records resemble what *Crawford* describes as other "formulations" of a "core class of 'testimonial' statements ...' *ex parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" *Id.* The state court's conclusion that the records were not testimonial statements within the meaning of *Crawford* is not contrary to federal law.

Indeed, Ellington conceded before the Wisconsin Court of Appeals that the certified medical records presented at his trial were not testimonial hearsay. *State v. Ellington*, 2005 WI App at ¶ 16.[3] In fact, even here Ellington does not claim that the medical records themselves should not have been

---

[3] Ellington's concession is consistent with the law regarding medical records. Medical records may be admitted at trial under the hearsay exception of Wis. Stat. § 908.03(6), as business records. *See Hagenkord v. State*, 100 Wis. 2d 452, 469-70, 302 N.W.2d 421 (1981). Under *Crawford*, business records are nontestimonial hearsay, and they may be admitted into evidence without violating the Commerce Clause. 541 U.S. at 56.
9

admitted into evidence, only that (1) police detective Erik Villarreal was improperly allowed to testify "as an expert or a specialist in medicine" when he read aloud from the medical records at trial (Br. Supp. Pet. 4.), and (2) that another violation of the Confrontation Clause occurred when "this same detective who has no medical training [was permitted] to vouch as to the reliability of [the victim's] medical report." (Br. Supp. Pet. 6.)

The fact that a police detective read aloud from medical records properly in evidence does not violate the Confrontation Clause. Nor does the fact that the detective testified that based on his professional experience, he considered medical records to be reliable. Villarreal merely read from the medical record as counsel or any witness could. He did not provide any testimony interpreting the records, discuss the medical significance of any portion of the records, or comment as to whether any of the findings contained in those medical records were correct. The detective only opined that he considered certified medical records, in general, to be a reliable source of information in the course of his police work. (Trial Tr. 77: 1-12.) He did not need to qualify as a medical expert to provide such testimony. More importantly, the detective provided his testimony about the reliability of medical records during the trial, when he was available for cross-examination. In fact, defense counsel did cross-examine the detective. (Trial Tr. 64-76.) Therefore, Ellington exercised his right to confront Villarreal, and the detective's testimony did not violate the Confrontation Clause.

**D. Ineffective Assistance**

Ellington cannot show that defense counsel was ineffective in failing to make a confrontation-based objection to Villarreal's testimony that as a detective, he considered medical records reliable, or to Villarreal's reading from the medical records. "A claim of ineffective assistance based on counsel's failure to object is 'tied to the admissibility of the underlying

10

evidence.'" *Pinkins v. Buss*, 215 Fed. Appx. 535 (7th Cir. 2007) (quoting *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001)). To prevail on a claim of ineffective assistance of counsel, Ellington would have to show that (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced him such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). "[F]ailing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted." *Hough*, 272 F.3d at 898. Villarreal's testimony, the evidence in question, was admissible under Wisconsin law and did not violate the United States Constitution. Therefore, defense counsel's decision not to raise a constitutional objection was reasonable, and counsel's performance did not prejudice Ellington. Ellington's ineffective assistance of counsel claim fails.

### III. CONCLUSION

For the reasons set forth above, I conclude that Ellington is not entitled to issuance of a writ of habeas corpus. His petition is therefore denied and the action dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** this   8th   day of November, 2007.

                                                         s/ William C. Griesbach
                                                         William C. Griesbach
                                                         United States District Judge